IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,913

STATE OF KANSAS,
*Appellant*,

v.

TERRY ALLAN ROSS,
*Appellee*.

SYLLABUS BY THE COURT

1.

A court has no authority to consider affirmative defenses at a preliminary hearing.

2.

Litigants do not need to present defenses at a preliminary hearing to preserve them for appeal.

3.

K.S.A. 21-5109(d) does not prohibit a single conviction of a general crime when a more specific crime exists.

4.

The Kansas Supreme Court reviews a Court of Appeals decision to direct a case to be reassigned to a different judge upon remand for an abuse of discretion.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 9, 2025. Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Oral argument held January 27, 2026.

1

Opinion filed July 17, 2026. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Chelsea Anderson*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the briefs for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, C.J.: The State charged Terry Allan Ross with two counts of abuse of a child under two different provisions of the abuse of a child statute. The district court dismissed the charges after a preliminary hearing. The State appealed, and the Court of Appeals reversed and remanded with instructions to reinstate the charges, bind Ross over for trial, and continue with the proceedings. Ross petitioned for review and the State filed a cross-petition for review. We affirm the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY

In 2022, the State charged Ross with two counts of child abuse for physical acts he allegedly performed on his son, A.R. It presented the facts that follow at the preliminary hearing.

On August 29, 2022, A.R.'s teacher sent him to the school nurse after noticing marks on his neck. A.R. reported to the nurse that "his dad had gotten mad at him and had grabbed his shirt . . . and twisted his shirt, and pulled up." He told the nurse he had also been hit on the back and on the bottom. The nurse reported this information to the Department for Children and Families (DCF).

2

Later that day, a detective and a social worker interviewed A.R. The social worker noticed a mark on A.R.'s neck and arm, and A.R. told her about two incidents of physical abuse and that he had more marks "on his butt." A.R. told her his dad "disciplined" him "using a . . . stick and a hand" when he brought home a necklace from another child at school. He said that the "stick" was too big for his mom's hands. He also described a time he held a boy's hand at school and so he "got a whooping with the black and the brown belt" from his dad and his dad choked him. He demonstrated by grabbing and pulling his own shirt and told the social worker that he could not breathe when it happened and that he was "trying to get his dad's hand away from it so that he could breathe." The social worker testified that he was "scrunching up" his shirt when he demonstrated this action.

The interviewing detective testified that A.R. reported his dad had hit and choked him. He also testified that A.R.'s stepmother identified herself as the "disciplinarian" in the home.

After the interview, A.R. was sent to a medical center for an examination by a forensic nurse. The nurse charted A.R.'s injuries and took photos of them. All were admitted as exhibits during the hearing. The nurse described a brown bruise and a red scar on the right buttock, a quarter-sized purple bruise on the left buttock, a purple and red bruise on the left upper thigh, a white, pale, linear stuttering scar on the upper chest, multiple circular red bruises on the upper chest, scratches on the upper chest, a linear pale scar on the left rib area, an abrasion on the left arm with surrounding hyperpigmentation, a brown bruise on the back, an injury on the outside lateral left side of the neck surrounded by pea-sized, purple bruising, multiple petechial, red bruises, a scar between the nipples, and a scar between the rib cage and the hip. A.R. reported that the scars on his neck were from his dad twisting his t-shirt, that the scar between his rib cage and hip came from being "whooped" with a belt, and that the chest petechiae came from bee stings. The nurse testified the petechia were not consistent with what she had seen bee stings do, and that petechia on the chest could result from restriction of the breath.

3

During the examination, the nurse asked A.R. why his dad stopped choking him. A.R. responded "because he didn't want to lose his only son." The nurse testified that twisting a t-shirt up around a neck can cause injury, restrict breathing, impede blood flow in the neck, and generally cause serious harm.

Based on this evidence, the State argued the court should bind Ross over on two counts of child abuse, one under K.S.A. 21-5602(a)(3)(C) and one under K.S.A. 21-5602(a)(1)(A). K.S.A. 21-5602(a)(3)(C) prohibits "knowingly impeding the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of the child or by blocking the nose or mouth of the child in a manner whereby death or great bodily harm could be inflicted." K.S.A. 21-5602(a)(1)(A) prohibits "[k]nowingly torturing, cruelly beating, cruelly striking or cruelly kicking" a child.

Before ruling, the court sua sponte discussed the "common law" "affirmative defense" of "parental discipline." It opined that this defense applies to some crimes but was a question for the jury. It resolved not to consider an affirmative defense of parental discipline in its ruling.

The court then dismissed count one, holding there was not probable cause to believe that the pressure Ross applied to A.R.'s neck could inflict death or great bodily harm.

Regarding count two, it concluded there was evidence that Ross beat or struck A.R. But it took the count under advisement to further consider whether there was probable cause to believe the striking or beating was cruel. The court eventually dismissed count two in a written ruling. It explained that, despite its earlier ruling, it would consider a "parental discipline" defense and dismissed the count because "it

4

appears . . . that this case involves conduct falling within the discretionary exercise of a parental right."

The State appealed the district court's rulings. A majority of the Court of Appeals reversed the preliminary hearing court's decision and remanded the case with instructions to bind Ross over on both counts. Judge Atcheson concurred and dissented. He agreed there was probable cause to support the choking charge under count one, but he would have concluded there was not probable cause to support the charge under count two. We granted Ross' petition for review and the State's cross-petition for review.

ANALYSIS

*The Court of Appeals made no error in holding the evidence was sufficient to bind Ross over on count one.*

Ross argues the Court of Appeals erroneously reweighed evidence in reinstating the charge against him for allegedly choking A.R.

At a preliminary hearing, the State must show probable cause to believe the defendant committed the charged crimes. K.S.A. 22-2902(c). "'Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *State v. Rozell*, 315 Kan. 295, 305, 508 P.3d 358 (2022) (quoting *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 [2012]). In determining whether the State has met this burden, the court "does not pass on credibility, and, when evidence conflicts, the judge must accept the version of the testimony most favorable to the State." *Rozell*, 315 Kan. at 305.

5

This court reviews the preliminary hearing court's probable cause determination de novo. 315 Kan. at 305. To the extent this issue requires statutory interpretation, this court's review is de novo. *State v. Beck*, 321 Kan. 261, 264, 577 P.3d 119 (2025).

The preliminary hearing judge concluded there was not probable cause to show Ross committed child abuse under K.S.A. 21-5602(a)(3)(C). This provision prohibits "knowingly impeding the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of the child or by blocking the nose or mouth of the child in a manner whereby death or great bodily harm could be inflicted."

The judge reasoned there was no evidence that any impairment to A.R.'s airway or pressure on his throat or neck was done "in a manner whereby death or great bodily harm could be inflicted."

All three members of the Court of Appeals panel disagreed. The majority reasoned that

> "witnesses testified that A.R. told them he was unable to breathe, he had to push Ross away when Ross was choking him with his shirt, and he heard his dad tell him the reason he stopped is that he did not want to lose his only son. Further, Ross' comment indicates he perceived the potential that A.R. could die if Ross continued to apply pressure to A.R.'s neck by twisting A.R.'s shirt." *State v. Ross*, No. 126,913, 2025 WL 1355401, at *5 (Kan. App. 2025) (unpublished opinion).

The majority also cited the picture of A.R.'s neck depicting injuries and the examining nurse's testimony that "restricting blood or air flow can cause serious harm." *Ross,* 2025 WL 1355401, at *5.

Judge Atcheson agreed there was enough evidence to bind Ross over on the charge. But he also pointed out that the court and the parties may have misinterpreted

6

K.S.A. 21-5602(a)(3)(C) in presuming the language "'in a manner whereby death or great bodily harm could be inflicted'" modifies the language "'impeding the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of the child.'" Judge Atcheson wondered whether the language in fact modified only the language immediately preceding it—"blocking the nose or mouth of the child." Atcheson did not answer his own query because he reasoned that regardless of whether the State needed to provide evidence that Ross' conduct was done "in a manner whereby death or great bodily harm could be inflicted," it had done so. *Ross*, 2025 WL 1355401, at *19-20 (Atcheson, J., concurring and dissenting).

In his petition for review, Ross does not address Judge Atcheson's statutory interpretation concerns. He maintains that the twisting of the shirt had to be done in a way that would cause death or great bodily harm, and he argues the Court of Appeals erred because it did not give deference to the preliminary hearing court's determination that the State failed to make that showing. He contends this court has to give deference to that determination because the only evidence of how much pressure Ross allegedly put on A.R.'s neck came from witnesses who demonstrated how A.R. had demonstrated the shirt twist for them. Because the appellate court cannot see those demonstrations, he argues, it must defer to the district court's determination.

The State points out that Ross presented the same arguments in the Court of Appeals and the panel rejected them. Indeed, the panel dismissed this argument, reasoning,

> "The district court was not presented with a credibility contest, and it made no credibility findings. And Ross construes both the evidence presented and our role here too narrowly. For one, the physical demonstrations were not the only evidence presented. Witnesses testified about A.R.'s description of the incident, and the State introduced a picture of A.R.'s neck which demonstrated the injury he sustained from the incident." *Ross*, 2025 WL 1355401, at *6.

Ross does not point to any error in this reasoning; he simply repeats his assertions.

We reject Ross' arguments. He cites no authority for the notion that in some circumstances an appellate court must defer to a preliminary hearing judge's probable cause determination, he points to no error in the panel's reasoning rejecting that position, and he has selectively ignored evidence supporting the probable cause determination. Ultimately, we agree with the Court of Appeals that the evidence is sufficient to establish that Ross committed child abuse under K.S.A. 21-5602(a)(3)(C), regardless of whether the State needed to prove any impediment to A.R.'s airway was likely to cause death or great bodily harm. As the majority panel pointed out, there was evidence Ross twisted A.R.'s shirt in a way that prevented A.R. from breathing. This court has held that "[s]trangulation can result in great bodily harm or death." *State v. Williams*, 308 Kan. 1439, 1458, 430 P.3d 448 (2018). And there was evidence that Ross had to stop the activity so that A.R. did not die. These pieces of evidence were enough to establish that Ross impeded A.R.'s airway in a way that could have cause great bodily harm or death.

*The Court of Appeals did not err in instructing the district court to bind Ross over on count two.*

The State charged Ross with a second count of child abuse under K.S.A. 21-5602(a)(1)(A), which prohibits "[k]nowingly torturing, cruelly beating, cruelly striking or cruelly kicking" a child, for allegedly hitting A.R. with his hand, a stick, and a belt. The district court dismissed the charge after sua sponte applying the "common law defense of parental discipline." It reasoned it was "appropriate" to apply this defense because parenting one's child is a fundamental right and the failure to consider the defense "would place any parent who beats or strikes his or her child at the complete and total prosecutorial discretion of the State, with no possible relief from prosecution prior to the decision of a jury."

8

The State appealed the court's decision, arguing the court erred because it is improper to consider affirmative defenses at a preliminary hearing. And, it argued, even if the court can consider affirmative defenses, parental discipline is not a recognized defense to abuse of a child in Kansas. Finally, it argued that the court ignored evidence in making its ruling.

A majority of the Court of Appeals panel ruled in the State's favor. The majority acknowledged that common law recognized a "parental privilege" to physically discipline a child to some extent, and that Kansas has recognized this as a defense to battery. *Ross*, 2025 WL 1355401, at *7. But it held that it is not a defense to abuse of a child in Kansas. It then concluded the State had established probable cause to believe Ross was guilty of "'cruelly beating, cruelly striking or cruelly kicking'" A.R. 2025 WL 1355401, at *11.

Judge Atcheson dissented. He agreed there is no common law parental discipline defense to abuse of a child in Kansas. But he reasoned the Legislature has incorporated the defense in K.S.A. 21-5602(a)(1)(B), a section of the abuse of a child statute that criminalizes "knowingly inflicting cruel and inhuman corporal punishment" on a child. Judge Atcheson then concluded there was no probable cause to believe Ross committed abuse of a child under K.S.A. 21-5602(a)(1)(A) because the evidence established that any striking or beating had been imposed for disciplinary purposes and subsection (A) does not criminalize corporal punishment. *Ross*, 2025 WL 1355401, at *26 (Atcheson, J., concurring and dissenting).

Ross petitioned for review of this issue, arguing the panel erred in holding there is no common law defense to abuse of a child in Kansas. He also claimed that K.S.A. 21-5602(a)(1)(A) is unconstitutionally vague and that he cannot be convicted under K.S.A. 21-5602(a)(1)(A) because K.S.A. 21-5602(a)(1)(B) is more specific. The State cross-petitioned for review, repeating its argument that the district court erred when it

9

considered an affirmative defense at a preliminary hearing and asserting the Court of Appeals erred when it failed to consider that argument.

We do not address the Court of Appeals decisions discussing whether there is a common law defense of abuse of a child in Kansas because we agree with the State's position that the district court erred in considering an affirmative defense at a preliminary hearing. We reject Ross' remaining arguments, hold that there was sufficient evidence to bind Ross over on count two, and affirm the Court of Appeals decision to bind Ross over on that charge.

The State argues the district court stepped outside of its authority when it considered an affirmative defense at a preliminary hearing. This involves questions of statutory interpretation, which this court reviews de novo. *Beck*, 321 Kan. at 264.

The court's role at a preliminary examination is limited. *State v. Bell*, 268 Kan. 764, 767, 1 P.3d 325 (2000). K.S.A. 22-2902 provides that at the hearing, the judge must determine whether "it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant." K.S.A. 22-2902(c). If the State makes this showing, the judge "shall order the defendant bound over to the district judge having jurisdiction to try the case." K.S.A. 22-2902(c).

This language does not include the consideration of an affirmative defense. This is because a successful affirmative defense does not negate the State's probable cause showing; it justifies or excuses the defendant's conduct, thereby relieving them of criminal liability. See Black's Law Dictionary 528 (12th ed. 2024) (affirmative defense is "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true"). Thus, whether a defendant has a successful affirmative defense is irrelevant to the court's determination at the preliminary hearing.

10

Our caselaw supports this reasoning. In *State v. Bell*, this court held the preliminary hearing court erred when it found that the State had established probable cause to support a charge of second-degree murder but refused to bind the defendant over on that charge because it believed "the evidence warranted a finding that the imperfect defense of . . . involuntary manslaughter had been proven." 268 Kan. at 768. The judge bound the defendant over for that crime, instead. This court ruled that in so doing, the judge had "stepped down from the bench and moved to the jury box." 268 Kan. at 768.

Our cases considering self-defense immunity confirm that a court errs in applying an affirmative defense at the preliminary hearing. To do so would be to treat affirmative defenses like immunity defenses by allowing them to immunize a defendant from criminal prosecution. But we have observed that there must be some daylight between defenses the Legislature has authorized as immunity defenses and those it has not. See *State v. Hardy*, 305 Kan. 1001, 1009, 390 P.3d 30 (2017) (citing favorably a Court of Appeals dissent opining that "self-defense and immunity are clearly distinct concepts. If immunity were the same as self-defense, there would have been no need to adopt a specific immunity statute").

Thus, we hold that the preliminary hearing judge erred when it considered whether Ross was immune from liability based on a common law affirmative defense. It had a duty to consider whether the State had established probable cause to believe that Ross "[k]nowingly tortur[ed], cruelly beat[], cruelly str[uck] or cruelly kick[ed]" A.R., and nothing more.

Ross argues that even if the court was wrong in dismissing count two based on an affirmative defense, it was correct in dismissing the charge because K.S.A. 21-5602(a)(1)(A) is unconstitutionally vague. A criminal statute that fails to give "'ordinary people . . . "fair notice" of the conduct [the] statute proscribes'" is unconstitutionally

11

vague in violation of due process requirements. *State v. Stubbs*, 320 Kan. 568, 577, 570 P.3d 1209 (2025) (*Sessions v. Dimaya*, 584 U.S. 148, 156, 138 S. Ct. 1204, 200 L. Ed. 2d 549 [2018]). Ross claims K.S.A. 21-5602(a)(1)(A) fails to give ordinary people notice of what it proscribes because the word "cruelly" can mean different things to different people.

Ross advanced this argument in the Court of Appeals. The majority considered the claim unpreserved because Ross did not present it in the district court and did not explain why the panel should consider it for the first time on appeal. But even if it were to consider the claim, it reasoned, it would fail because it has already been rejected by this court. *Ross*, 2025 WL 1355401, at *17 (citing *State v. Hupp*, 248 Kan. 644, 656, 809 P.2d 1207 [1991]).

Ross argues before us that the panel erred in holding he needed to present his constitutional defense before his charges were dismissed in order to advance those claims on appeal.

We review the decision whether to consider an unpreserved issue for an abuse of discretion. *Schutt v. Foster*, 320 Kan. 852, 855, 572 P.3d 770 (2025). A court abuses its discretion when its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. 320 Kan. at 855.

We have repeatedly explained that we will not review constitutional issues for the first time on appeal. *In re A.S.*, 319 Kan. 396, 399, 555 P.3d 732 (2024). And we have been clear "[f]or over a decade now" that a party wishing for an appellate court to make an exception for this rule must explain why one of three preservation exceptions applies. *Foster*, 320 Kan. at 858. As the State points out, Ross did not brief a preservation exception, either in the Court of Appeals or before us. This failure means the panel did not abuse its discretion in declining to review his claim.

12

We acknowledge that to present the issue in district court, Ross needed to argue it before or at the preliminary hearing—a potentially onerous burden because a preliminary hearing is meant to occur within 14 days of arrest. K.S.A. 22-2902(b). And even if Ross had successfully presented the claim, it is unlikely the district court would have ruled on it. As discussed above, the court is limited at a preliminary hearing to considering only whether the State has established probable cause to believe the defendant committed the crime.

But neither the burden to Ross nor the unlikelihood of receiving a ruling required the Court of Appeals to review this claim for the first time on appeal. *State v. Arnett*, 314 Kan. 183, 185, 496 P.3d 928 (2021) (appellate court is under no obligation to review unpreserved claim); see also *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (declining to review unpreserved claim even if preservation exceptions applied because trial judge never had "the opportunity to address the issue in the context of [the] case and such an analysis would have benefitted [appellate] review").

The panel also opined that Ross' claim would be meritless, anyway, because this court has previously rejected his claim. In *State v. Fahy*, 201 Kan. 366, 440 P.2d 566 (1968), this court considered the predecessor statute to K.S.A. 21-5602(a)(1)(A) (subjecting to criminal penalty "any person who shall torture, cruelly beat or abuse any child" under 16 "or . . . willfully inflict upon such child any cruel or inhuman corporal punishment"). The *Fahy* court held the statue was not vague because all of its terms "convey[ed] with sufficient definiteness what conduct is prohibited by law." It held that all of the words in the statute, including "cruelty," "provide[d] reasonabl[y] definite standards which one reading the statute can understand and contemplate." *Fahy*, 201 Kan. at 370. This court was asked to overturn *Fahy* in *Hupp*, 248 Kan. 644. It declined to do so, reasoning that the language in the statute was sufficiently definite to avoid a vagueness problem. 248 Kan. at 656.

While the analysis in *Fahy* and *Hupp* was brief and may benefit from some review, Ross has not addressed either case in his briefing, and he has not asked us to consider this portion of the panel's ruling or to overturn that precedent. We will not do so sua sponte. See *State v. Gross*, 308 Kan. 1, 6, 417 P.3d 1049 (2018) (court would not review panel's Sixth Amendment ruling when party asked for review of only its statutory ruling).

In sum, we conclude the panel did not abuse its discretion in declining to review Ross' vagueness claim for the first time on appeal, especially when he did not brief a preservation exception. We affirm the panel's decision.

Finally, Ross argues that even if this court rejects his previous two arguments, the district court made no error in dismissing count two against him under K.S. A. 21-5602(a)(1)(A) because K.S.A. 21-5109(d) prohibits a conviction for a general offense when a more specific offense is available. He argues K.S.A. 21-5602(a)(1)(B) is more specific than K.S.A. 21-5602(a)(1)(A).

The panel rejected Ross' argument because this court moved away from the court-created general/specific rule in *State v. Euler*, 314 Kan. 391, 396, 499 P.3d 448 (2021). Ross argues this was error because even though this court denounced the rule as it exists in the caselaw, the Legislature has codified the rule in K.S.A. 21-5109(d).

Ross is correct that the rule still exists in some form through K.S.A. 21-5109(d). But his argument fails because K.S.A. 21-5109(d) is inapplicable here.

When conduct would violate more than one criminal statute, K.S.A. 21-5109(a) permits the State to charge and convict the defendant of multiple crimes. ("When the same conduct of a defendant may establish the commission of more than one crime . . . the defendant may be prosecuted for each of such crimes.") But the subsections that

follow place limits on this authority. K.S.A. 21-5109(d) creates one such limit. It provides:

> "Unless otherwise provided by law, when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct, the defendant:

> "(1) May not be convicted of the two crimes based upon the same conduct; and
> "(2) shall be sentenced according to the terms of the more specific crime."

Ross argues child abuse under K.S.A. 21-5602(a)(1)(B) is more specific than child abuse under K.S.A. 21-5602(a)(1)(A) because it prohibits "cruel and inhuman corporal punishment" of a child, while subsection (a)(1)(A) prohibits "torturing, cruelly beating, cruelly striking or cruelly kicking" a child. Thus, he argues, K.S.A. 21-5109(d) prohibits him from being convicted under K.S.A. 21-5602(a)(1)(A).

Nothing within K.S.A. 21-5109(d) prohibits a single conviction of a general crime when a more specific crime exists. K.S.A. 21-5109(d)(1) prohibits two convictions based on the same conduct. K.S.A. 21-5109(d)(2) prohibits a sentence based on a more general crime when the defendant can be sentenced on a more specific crime. Ross was charged with only one crime based on the alleged beating or striking, making these provisions inapplicable.

And even if K.S.A. 21-5109(d)(2) could be construed to prevent a conviction of a general crime when the State could have charged a more specific crime, as Ross contends, K.S.A. 21-5602(a)(1)(B) is not a more specific form of (a)(1)(A). In *State v. Johnson*, 321 Kan. 357, 374, 580 P.3d 20 (2025), we explained that "a statute describes a crime that is more specific than another only if it prohibits identical conduct plus an additional, specifying element." Provision (a)(1)(B) does not prohibit identical conduct plus an additional, specifying element. It adds an "inhuman" element, but it does not

15

narrow the criminalized behavior to something more specific than torture, beating, striking, or kicking.

The Court of Appeals made no error in rejecting Ross' argument because K.S.A. 21-5109 is inapplicable and, even if it is not, provision K.S.A. 21-5602(a)(1)(B) is not more specific than (a)(1)(A).

Under appropriate analysis for a preliminary hearing, Ross should be bound over on count two. As the majority observed, there was evidence "Ross struck A.R. with his hand, a belt, and a stick" and evidence of "injuries all over seven-year-old A.R.'s body—his bottom, legs, back, chest, rib area, and arm—including 'loop marks' consistent with being struck by a belt and linear marks on his chest consistent with being struck with a stick." Finally, a witness "testified A.R. described the stick Ross used as too big for his mother's hand." 2025 WL 1355401, at *11. This evidence was "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of" Ross' guilt. *Rozell*, 315 Kan. at 308.

We affirm the Court of Appeals decision reversing the district court's dismissal of count two.

*The Court of Appeals made no error when it declined to direct the case be assigned to a different judge upon remand.*

In the Court of Appeals, the State requested in its concluding sentence that the Court of Appeals "remand the matter to a different judge." The panel declined this request. It wrote, "We decline to grant the State's request to order the case be assigned to a different judge on remand although nothing in this opinion should be read to preclude that from happening for reasons such as judicial economy or efficiency." *Ross*, 2025 WL 1355401, at *17.

16

The State argues this was error. We disagree.

An appellate court has an inherent power that it may exercise when "reasonably necessary for the administration of justice provided these powers in no way contravene or are inconsistent with substantive statutory law." *Wilson v. Am. Fid. Ins. Co.*, 229 Kan. 416, 421, 625 P.2d 1117 (1981); see *State v. Steinert*, 317 Kan. 342, 356, 529 P.3d 778 (2023) (Supreme Court's inherent power to administer justice permits court to decide which forum is best when concurrent jurisdiction exists); *Comprehensive Health of Planned Parenthood of Kansas & Mid-Missouri, Inc. v. Kline*, 287 Kan. 372, 419, 197 P.3d 370 (2008) (Supreme Court's inherent authority permits it to sanction behavior).

This inherent power permits an appellate court to direct a case be assigned to a different judge upon remand. See, e.g., *State v. Smith*, 308 Kan. 778, 789, 423 P.3d 530 (2018) (remanding to a different judge when judge looked at facts outside of the record and exhibited prejudice). A reassignment is often appropriate when the original judge exhibited bias or prejudice or otherwise failed to comply with rules of judicial conduct; or when it is necessary to ensure the appearance of judicial neutrality. Supreme Court Rule 601B, Canon 2, Rule 2.3, Comment [1] (2026 Kan. S. Ct. R. at 490) ("A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute."); *State v. One 1995 Chevrolet Caprice Classic/Impala SS*, 53 Kan. App. 2d 35, 42, 382 P.3d 476 (2016) (remanding forfeiture proceeding to new judge when ruling appeared to intentionally disregard law); *State v. Urista*, 296 Kan. 576, 595, 293 P.3d 738 (2013) (remanding for resentencing when State breached plea agreement and directing a new judge be assigned for the "appearance of judicial neutrality").

We review this exercise of inherent power for an abuse of discretion. See *Holt v. State*, 290 Kan. 491, 502, 232 P.3d 848 (2010) (when a court exercises inherent authority

17

to impose filing restrictions, appellate review is for an abuse of discretion); *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006) (trial court's exercise of inherent power to exclude cumulative evidence or that which is more prejudicial than probative is reviewed for abuse of discretion); *Schoenholz v. Hinzman*, 295 Kan. 786, 798, 289 P.3d 1155 (2012) (appellate court reviews exercise of inherent authority to impose sanctions for an abuse of discretion). "A court abuses its discretion when its action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *Foster*, 320 Kan. at 855.

The State argues that the judge in this case exhibited bias because he acted as a litigant for Ross in sua sponte raising the parental discipline defense. It also argues that the district court's comments regarding dissatisfaction with the current state of the law "indicates a motive to push change rather than simply decide the matter before the district court."

The State offers no support for the notion that a district court acts with bias in raising issues sua sponte that it believes to be legally applicable. To the contrary, it has an obligation to do so in some cases. See *State v. Turner*, 318 Kan. 162, 166, 542 P.3d 304 (2024) (district court commits error if it fails to offer unrequested jury instruction that was factually and legally appropriate).

The State also fails to offer any authority for the notion that a judge's apparent dissatisfaction with the state of the law shows they ruled without neutrality. Moreover, the judge's commentary did not express such dissatisfaction. He suggested only that his decision appeared to comply with relevant law, and so if it did not comport with legislative intent, the Legislature would hopefully clarify by enactment.

We conclude the Court of Appeals did not abuse its discretion in declining to direct the case be remanded to a different judge.

We affirm the Court of Appeals decision reversing the district court and remand with directions to bind Ross over on both counts.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

Luckert, J., not participating.